**In re STILINOVICH.**

**No. C3–91–1509.**

Court of Appeals of Minnesota.

Jan. 14, 1992.

---

Fred T. Friedman, Sixth Judicial Dist. Public Defender, Duluth, Fabian Danich, Asst. Sixth Judicial District Public Defender, Chisholm, for appellant Stilinovich.

Alan L. Mitchell, St. Louis County Atty., Clay W. Odden, Asst. County Atty., Duluth, for respondent.

Considered and decided by SCHUMACHER, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Robert Stilinovich, carrier of the human immunodeficiency virus, threatened to continue to have sexual intercourse without disclosing his status and was committed for an indeterminate period as a psychopathic personality. He appeals from the judgment. We reverse.

## FACTS

Appellant came to the attention of authorities when he asked to be admitted to a regional mental health treatment center. After making threats to kill a physician and police officers, he was transported to a hospital. He escaped from the hospital and, when apprehended, was transferred to another hospital.

Initially, appellant was out of control. He refused medication and threatened to kill people. Fifteen people were required to subdue appellant and put him in restraints.

A petition was filed to commit appellant as mentally ill; the petition was later amended to allege he should be committed as a psychopathic personality. Appellant was then transferred to a regional treatment center. While there, appellant engaged in a total of nine instances of inappropriate sexual conduct, including propositioning a vulnerable female to have sex with him for $50 and becoming verbally abusive when she refused. Appellant also approached male staff members and touched them sexually.

Appellant has tested positive for the human immunodeficiency virus (HIV). He advised a social worker that he wanted to have sex with people and did not want to tell them he was HIV positive. The social worker found this to be irresponsible. Ap-

pellant also uses the fact that he is HIV positive to intimidate people by scratching and spitting upon them. The social worker found appellant to be emotionally unstable, impulsive, and dangerous to others.

At the initial commitment hearing, Dr. Donn Nelson stated that he believed appellant had demonstrated a lack of remorse for his behavior. Nelson also indicated appellant has a pattern of pathological substance abuse, which apparently has precipitated brief psychotic episodes. Nelson believes, however, that appellant is aware of the consequences of his actions and responds to controls.

Dr. Hector Zeller examined appellant and found that he was antisocial, impulsive, and showed poor judgment. Zeller determined that appellant was free of mental illness or deficiency and was able to recognize his actions, but was without a desire to control himself. He found appellant to be sexually irresponsible and dangerous and concluded that appellant did not show the self-control made necessary by the fact he is HIV positive.

After hearing the above evidence, the trial court concluded appellant was a psychopathic personality and ordered his commitment to the Minnesota Security Hospital. A review hearing was held on whether appellant should be committed for an indeterminate period.

The Minnesota Security Hospital staff conducted an evaluation of appellant. It did not recommend continued commitment of appellant as a psychopathic personality. Their report noted instead that, while appellant has frequently indicated an intent to have sex with others, he has not followed through. It found his behavior was not out of control and that he appeared to understand the consequences of his actions. The Security Hospital report recommended that if appellant continues to threaten others or engages in forced sexual contact, he be held accountable through the criminal justice system.

Dr. Douglas Fox of the Minnesota Security Hospital indicated the treatment team was not willing to support a commitment as a psychopathic personality based upon

threatening statements alone. He was aware of the reported incidents of inappropriate sexual comments or actions at the regional treatment center, but viewed them as "puffing."

The trial court found that the hospital characterized appellant's violent and aggressive conduct, such as spitting, scratching, fighting, and making terroristic threats, as a technique to intimidate, and as being consistent with having an antisocial personality. The court also found that appellant continued to express an intention to have sex with others without advising them that he is HIV positive. It determined that the evidence showed he would use intimidation, and even force, in order to have intercourse if he were in an unsupervised setting, and that any intercourse by appellant is dangerous.

The trial court concluded appellant continues to be emotionally unstable and impulsive, lacks good judgment, and fails to show concern for others regarding the transmission of the HIV virus through intercourse. It found the criminal justice system is unable to address appellant's dangerousness. It concluded appellant continues to be irresponsible with respect to sexual matters and is a danger to others. The trial court ordered appellant's commitment as a psychopathic personality for an indeterminate period.

Robert Stilinovich appeals.

## ISSUE

Was it clearly erroneous for the trial court to determine that appellant has a psychopathic personality and is in need of indeterminate commitment?

## ANALYSIS

A psychopathic personality is defined as: [T]he existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any such conditions, as to render such person *irresponsible for personal conduct* with

respect to sexual matters and thereby dangerous to others.

Minn.Stat. § 526.09 (1990) (emphasis added). The supreme court has stated:

[T]he language * * * of the act is intended to include those persons who by an habitual course of misconduct in sexual matters, have evidenced an *utter lack of power to control their sexual impulses,* and who, as a result, are likely to attack or otherwise inflict injury, loss, pain, or other evil on the objects of their uncontrolled and uncontrollable desire.

*State ex rel. Pearson v. Probate Court of Ramsey County,* 205 Minn. 545, 555, 287 N.W. 297, 302 (1939), *aff'd,* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940) (emphasis added). It is not reasonable, however, to apply the statute "to every person guilty of sexual misconduct nor even to persons having strong sexual propensities." *Id.* at 555, 287 N.W. at 302.

The provisions of chapter 253B for commitment as mentally ill and dangerous apply to a commitment as a psychopathic personality. Minn.Stat. § 526.10, subd. 1. Commitment as a psychopathic personality requires proof by clear and convincing evidence. Minn.Stat. § 253B.18, subd. 1; *see In re Joelson,* 344 N.W.2d 613, 614 (Minn. 1984). The court may commit the person after the initial hearing if it finds the patient has a psychopathic personality, but the commitment is subject to a mandatory review conducted by the security hospital within 60 days. Minn.Stat. § 526.10, subd. 1. After the review hearing, if the trial court finds the patient continues to be a psychopathic personality, the court shall order commitment for an indeterminate period. Minn.Stat. §§ 526.10, subd. 1; 253B.18, subd. 3.

Where conflicting evidence is presented as to the existence of a psychopathic personality, resolution is a question of fact to be determined by the trial court upon all the evidence. *In re Martenies,* 350 N.W.2d 470, 472 (Minn.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984). This court, however, need not defer to the trial court if the trial court erred as a matter of law. *Frost–Benco Elec. Ass'n v. Minnesota*

*Pub. Util. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

Appellant first challenges various findings of fact as clearly erroneous. Appellant specifically challenges the trial court's finding that he continues to express an intent to have sex with others and not to tell those partners he is HIV positive. He further challenges the trial court's finding that records from the regional treatment center show appellant would use force or intimidation to have intercourse if not in a supervised setting. He points to Dr. Fox's testimony that the incidents at the regional treatment center were mere puffing and propositioning. Appellant further testified that his behavior is charted daily and no aggressive or physical incidents involving him have been recorded.

Appellant argues the record of the June 5 hearing shows he is aware of his HIV-positive status and can exercise responsible judgment in regard to the disease. He also cites the April 15 psychiatric progress report which states appellant understands the risks of transmission and appreciates the consequences of his acts. Appellant asserts he has not engaged in any behaviors dangerous to others, but has only acted loud and intimidating.

We determine that the challenged findings are supported by evidence and are not clearly erroneous. *See In re Joelson,* 385 N.W.2d 810, 811 (Minn.1986).

Appellant also challenges the trial court's use of evidence from the initial hearing in determining that appellant should be committed for an indeterminate period. Only Dr. Fox testified at the review hearing; he opposed appellant's commitment as a psychopathic personality. However, the trial court's use of evidence from the initial hearing was proper. *See In re Clements,* 440 N.W.2d 133, 136–37 (Minn.App.1989), *pet. for rev. denied* (Minn. June 21, 1989). At the review hearing the trial court may consider findings made at the initial commitment hearing. Minn.R.Civ. Commitment 12.06. The trial court could have drawn its findings from the testimony at the initial hearing, and its

determinations are not clearly erroneous despite conflicting evidence.

■ Appellant next challenges the propriety of his commitment even if there was evidence that appellant continued to be emotionally unstable, lacked good judgment, failed to show concern for others regarding transmission of the HIV virus through intercourse, and even if the trial court found he was irresponsible with regard to sexual matters and a danger to others because of his expressed intent to have intercourse with others and not advise them that he is HIV positive. The question is, appellant argues, whether this is a proper case for use of the psychopathic personality commitment statute.

It is apparent from the trial court's findings that, ultimately, it was appellant's HIV-positive status that caused the trial court to conclude he was dangerous to others. While appellant's behavior may fall within the broadest possible literal reading of the statutory language, it was not necessary or appropriate for the trial court to stretch the psychopathic personality law to address the health problem presented by appellant because the Minnesota Legislature dealt with this type of circumstance in 1987 by passing the Health Threat Procedures Act. Minn.Stat. §§ 144.4171–.4186 (1990).

This more specific act should control.

[W]here two statutes contain general and special provisions which seemingly are in conflict, the general provision will be taken to affect only such situations within its general language as are not within the language of the special provision.

*Ehlert v. Graue,* 292 Minn. 393, 397–98, 195 N.W.2d 823, 826 (1972); Minn.Stat. § 645.26, subd. 1 (1990). Because of this rule of statutory application, we hold the trial court erred in holding that the facts found justify commitment under the psychopathic personality statute.[1]

The Health Threat Procedures Act was conceived by the Minnesota Department of Health. The Department concluded that traditional disease control interventions, including those for noncompliant carriers, "must be modified to fit both the epidemiology of [HIV] and evolving constitutional law." Janus, *AIDS and the Law: Setting and Evaluating Threshold Standards for Coercive Public Health Intervention,* 14 Wm. Mitchell L.Rev. 503, 520 (1988).[2]

The Act provides specific procedures to address the problems of recalcitrant carriers of the HIV virus. *See id.* at 521–28. If a carrier is a health threat to others, the Commissioner of Health can issue a directive requiring the person to cooperate with health authorities. Minn.Stat. § 144.4172, subd. 6. Failure or refusal of the carrier to comply is grounds for commencing a proceeding in district court. Minn. Stat. § 144.4173, subds. 1, 2. In this action, the Commissioner must prove the allegations by clear and convincing evidence. Minn.Stat. § 144.4179, subd. 1.

The court has a number of remedies available, but must use the remedy which is the "least restrictive alternative * * * to achieve the desired purpose of preventing or controlling communicable disease." Minn.Stat. § 144.4180, subd. 3. The remedies available include ordering the person to obtain education and counseling, to participate in a particular treatment program, to cease and desist from conduct posing a health threat to others, or to live in a supervised setting. Minn.Stat. § 144.4180, subd. 1.

The court may also commit the person to "an appropriate institutional facility." Minn.Stat. § 144.4180, subd. 1(8). Before the court may commit a person, it must

---

1. In addition, where the provisions of two laws are irreconcilable, "the law latest in date of final enactment shall prevail." Minn.Stat. § 645.26, subd. 4 (1990).

2. There have been other proposals to quarantine irresponsible or recalcitrant carriers of the HIV virus who recklessly spread the disease. Note, *Preserving the Public Health: A Proposal to* *Quarantine Recalcitrant AIDS Carriers,* 68 B.U.L.Rev. 441, 448 (1988). These proposals address the problem through the public health laws. *Id.* at 462–63. Coercive public health interventions are not new, and quarantine, isolation, and compulsory testing are traditional tools of public health. Janus, *AIDS and the Law,* 14 Wm. Mitchell L.Rev. at 504–05.

consider the recommendations of a commitment review panel appointed by the Commissioner. Minn.Stat. § 144.4180, subd. 2. The commitment order must set a time period for commitment, which cannot exceed six months unless good cause is shown for continued commitment. Minn. Stat. § 144.4180, subd. 1(8). Thus, the legislature has enacted specific legislation to address the problem of a carrier who poses a health threat to others. That specific statute should be applied when it fits.

Further, the more general psychopathic personality act was passed to deal with *conduct,* not health conditions. Appellant has not evidenced an "habitual course of misconduct in sexual matters." *See Pearson,* 205 Minn. at 555, 287 N.W. at 302. Although appellant's behavior evidenced an antisocial personality, it is clear that, absent his HIV-positive status, his conduct does not fit what usually has been found for commitment as a psychopathic personality. Consider, for example, *Martenies,* 350 N.W.2d at 471 (committed patient abused seven-year-old stepdaughter with multiple incidents of oral and anal intercourse, and other forms of assault, as well as abusing wife and raping unrelated 13–year–old girl).

The fact that a person is HIV positive would, of course, not preclude commitment as a psychopathic personality if the requirements of that law were otherwise met. Where, however, appellant's commitment as a psychopathic personality is based upon his status as HIV positive and upon his intent to act in an irresponsible or reckless manner which could transmit the virus, and not upon conduct that would justify commitment even without the HIV condition, we hold the problem should be addressed under the special provisions of the Health Threat Procedures Act, Minn.Stat. §§ 144.4171–.4186.

We note that despite our holding that commitment of appellant as a psychopathic personality was improper, his immediate release is not necessary. Judgment on a court of appeals decision is entered not less than 30 days after the filing of the order, or after denial of a petition for review to the supreme court. Minn.R.Civ.App.P. 136.02; *see Hoyt Inv. Co. v. Bloomington Commerce & Trade Ctr. Assoc.,* 418 N.W.2d 173, 176 (Minn.1988). This court's decision is not final until that time. *Id.* We assume that prior to that time, the Commissioner of Health will, if appropriate, take action under the Health Threat Procedures Act, Minn.Stat. §§ 144.4171–.4186.

## DECISION

The judgment of the trial court, committing appellant as a psychopathic personality, is reversed.

Reversed.