**In the Matter of Stanley SPENCE.**

No. C0-88-2090.

Court of Appeals of Minnesota.

Jan. 10, 1989.

Review Denied Feb. 22, 1989.

* Acting as judge of the Court of Appeals by ap-

Dwight J. Leatham, Minneapolis, for Stanley Spence.

Thomas L. Johnson, Hennepin County Atty., John R. Owen, Asst. Hennepin County Atty., Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and SHORT and STONE,* JJ.

## OPINION

SHORT, Judge.

Stanley Spence appeals the trial court's denial of his petition for release from the chemical dependency program at Anoka Metro Regional Treatment Center ("Treatment Center") pursuant to Minn.Stat. § 253B.17 (1986). Appellant argues he should be released because the six-month time limitation for commitment specified in Minn.Stat. § 253B.09, subd. 5 began to run on the date of the commitment order rather than on the date he actually arrived at the

pointment pursuant to Minn. Const. art. 6, § 2.

Treatment Center almost six months later. Respondent Hennepin County contends that the six-month time limitation did not begin to run until appellant actually arrived at the Treatment Center. We agree with respondent, and affirm the trial court.

## FACTS

On October 15, 1987, the trial court issued an order and judgment committing appellant to the Anoka Metro Treatment Center so that he could receive treatment for chemical dependency. Prior to the issuance of the trial court's order, appellant had been admitted to the Treatment Center 77 times. The trial court stayed the commitment on the condition that appellant voluntarily report to the Treatment Center by October 19, before 4:30 p.m. When appellant failed to report to the Treatment Center, the trial court on October 20, 1987, revoked the stay and ordered that appellant be committed.

Appellant did not arrive at the Treatment Center until May 4, 1988. The Treatment Center filed a written report with the trial court on July 14, 1988, as required by Minn.Stat. § 253B.09, setting forth the diagnosis, treatment plan and anticipated discharge date. Appellant moved for release under Section 253B.17, contending that the six-month time limit authorized by statute for chemical dependency treatment had expired, and also that the Treatment Center had failed to file its written report within the 60 to 90 day time limitation specified in Section 253B.09, subd. 5. The trial court denied appellant's motion, and he appeals.

## ISSUE

Does Minn.Stat. § 253B.09, subd. 5 (1986) limit the initial commitment period to six months from the date of the order, regardless of when the committed person actually enters the treatment facility?

## ANALYSIS

Minn.Stat. § 253B.09, subd. 5 provides: Initial Commitment Period. For persons committed as mentally ill, mentally retarded, or chemically dependent the initial commitment shall not exceed six months. At least 60 days, but not more than 90 days, after the commencement of the initial commitment of a person as * * * chemically dependent, the head of the facility shall file a written report with the committing court with a copy to the patient and patient's counsel.... *If no written report is filed within the required time,* or if it describes the patient as not in need of further institutional care and treatment, *the proceedings shall be terminated* by the committing court, and the patient shall be discharged from the treatment facility * * *.

(Emphasis added.)

Appellant contends that the commitment period runs from the date the order for commitment issues, regardless of whether the person actually is admitted to the treatment facility. This interpretation of the statute is not consistent with the language of related statutes, with general principles of statutory construction, or with the statute's underlying purpose.

The Minnesota Commitment Act specifies the procedures to be followed in committing a person to a treatment facility. The various provisions of the Act assume that a person committed to a treatment facility is actually residing there. Section 253B.10, subd. 1 for example, specifies that "the court shall issue a warrant * * * committing the patient to the custody of the head of the treatment facility." The provision goes on to say that "[a]fter arrival, the patient shall be under the control and custody of the head of the treatment facility." *Id.* Such language is meaningless if a "committed" person never reports or is not brought to the treatment facility. Such a construction would ignore the presumptions that the legislature does not intend an absurd result, and intends the entire statute to be effective and certain. *See* Minn. Stat. § 645.17(1) and (2) (1986).

We find an additional reason to affirm the denial of appellant's motion by looking to the purpose for which the statute was enacted. Committing a person with a serious chemical dependency problem to a treatment facility is not, in our view, a

punitive measure. Rather, the commitment is intended to rehabilitate the chemically dependent person, and to protect the person and those around him or her from serious physical harm. *See* Minn.Stat. § 253B.02, subd. 6. This purpose is wholly frustrated if the chemically dependent person does not receive the rehabilitative treatment available at the treatment facility.

Appellant argues that confining him to the Treatment Center more than six months after the date of the commitment order violates his rights to due process under the state and federal constitutions. He claims that unless the commitment order expires within the six-month time period, the time limitation is meaningless and he remains under the threat of commitment for an indefinite period. Such a result, he claims, is not consistent with the due process requirement that the nature and duration of commitment bear some reasonable relation to the purpose for the commitment. *See Jackson v. Indiana,* 406 U.S. 715, 737–38, 92 S.Ct. 1845, 1857–58, 32 L.Ed.2d 435 (1972).

The Minnesota Commitment Act is, however, designed to protect against such an indefinite, involuntary commitment. Section 253B.09, subd. 5 requires that the treating facility issue a written report within 60 days to 90 days after the commitment period commences, detailing with supporting data the diagnosis of the patient, the anticipated discharge date and the individualized treatment plan. The report must also state whether in the opinion of the head of the facility the patient satisfies the statutory requirement for continued commitment. *See* Minn.Stat. § 253B.12, subd. 1. Furthermore, a person adjudicated chemically dependent and in need of commitment may petition the court for release on the basis that he or she "is not in need of continued institutionalization or * * * that [he or she] is no longer * * * chemically dependent." Minn.Stat. § 253B.17, subd. 1.

In the present case, there is no indication that appellant corrected his problem with chemical dependency during the time he was avoiding court-ordered treatment. The record instead indicates that appellant continues to have a serious chemical dependency problem that endangers his own well being and threatens the safety of others. Principles of statutory construction and the purpose for which the statute was enacted compel the conclusion that the six-month limitation period begins to run from the date the person arrives at the treatment facility and is physically placed under the control of its director. *See* Minn.Stat. § 253B.10, subd. 1. The trial court therefore ruled correctly in denying appellant's motion for release.

It logically follows that the time period for filing the director's written report begins to run on the date the committed person actually enters the treatment facility. It would make no sense to require the director to file the report 60 to 90 days after the order issues even when the person has not arrived at the treatment facility, and would frustrate the legislature's intent in passing the statute. The treating facility cannot evaluate a person's treatment needs unless the person is a patient in the facility, and has resided there for at least 60 days.

## DECISION

The period of commitment for a patient under the Minnesota Commitment Act of 1982 begins to run from the time the person arrives at the treatment facility and is physically placed under the control of its director. The trial court correctly denied appellant's motion for release and correctly ordered his continued commitment at the Anoka Metro Regional Treatment Center.

AFFIRMED.