In the Matter of Manuel ROBLEDO.

No. CX–99–2108.

Court of Appeals of Minnesota.

June 6, 2000.

Allan R. Poncin, Minneapolis, for appellant Robledo.

Mike Hatch, Attorney General, St. Paul, for respondent state.

Amy Klobuchar, Hennepin County Attorney, Carolyn A. Peterson, Thomas G. Lavelle, Assistant County Attorneys, Minneapolis, for respondent county.

Considered and decided by HARTEN, Presiding Judge, LANSING, Judge, and DAVIES, Judge.

## OPINION

LANSING, Judge

On appeal from recommitment as a mentally ill person, Manuel Robledo contends that the district court violated Minn.Stat. § 253B.13, subd. 1 (1998), by allowing petitioners to use consecutive-recommitment procedures even though his original commitment had expired. Because the statutory procedures for consecutive recommitment require a new petition, hearing, and determination to be completed before the expiration of any existing commitment order, we reverse.

## FACTS

Manuel Robledo was committed as a mentally ill person to the Minneapolis Veterans' Affairs Medical Center and the Anoka–Metro Regional Treatment Center (AMRTC) on July 1, 1998. At a review hearing the following December, the court continued Robledo's commitment through September 30, 1999, under Minn.Stat. §§ 253B.12, .13 (1998).

On September 29, 1999, one day before Robledo's commitment was due to expire, Hennepin County and AMRTC (petitioners) filed three petitions. One petition requested recommitment, the second requested continued administration of neuroleptic drugs (a Jarvis order), and the third requested an emergency extension of the current orders until completion of a hearing. The recommitment petition was accompanied by the required examiner's statement from Robledo's treating psychologist.

The court issued an ex parte emergency order continuing the December 1998 orders. Robledo challenged the ex parte order at his consecutive-recommitment hearing, contending that the order violated the statutory recommitment provisions and his constitutional rights to notice, legal representation, and a hearing within 72 hours of the commitment petition. The court rejected Robledo's arguments and ordered Robledo's continued involuntary institutionalization until September 30, 2000. Robledo appeals the recommitment.

## ISSUE

Does Minn.Stat. § 253B.13 (1998) permit the court to temporarily extend an involuntary commitment until completion of a hearing and determination on a petition for consecutive recommitment?

## ANALYSIS

The Minnesota Commitment and Treatment Act provides for an initial commitment period not to exceed six months. Minn.Stat. § 253B.09, subd. 5 (1998). If the person is confined more than 60 days, the act requires the custodial facility to provide a report indicating, among other things, whether the patient is in need of further care and treatment. Minn.Stat. § 253B.12, subd. 1(b) (1998).

The commitment act requires the court to hold a review hearing within 14 days of

receipt of the report and before the initial commitment expires to determine whether there is clear and convincing evidence that the patient requires continued commitment. *Id.,* subds. 2a, 4 (1998). If the court concludes that continued commitment is required, it may order the continued commitment for a specific time, not to exceed 12 months. Minn.Stat. § 253B.13, subd. 1 (1998).

The statute prohibits a further extension of commitment beyond the expiration of the continued commitment unless specific procedures are followed:

> At the conclusion of the prescribed period, commitment *may not be continued* unless a new petition is filed pursuant to section 253B.07 *and* hearing *and* determination made on it.

*Id.* (emphasis added). Consecutive recommitment after expiration of a continued commitment incorporates the petition requirement of an initial commitment hearing but is subject to the statutory standard of proof for the continued commitment after a review hearing, rather than the standard applicable to an initial commitment. *Id.*

■ The standard of proof for an initial commitment is higher than the standard of proof for continued commitment after a review hearing. *Compare* Minn.Stat. § 253B.02, subd. 13 (1998) (defining mentally ill person as one who has made recent attempt or threat to physically harm self or others or recent failure to provide necessities), *with* Minn.Stat. § 253B.12, subd. 4 (specifying that determinations for continued treatment need not be based on finding of recent attempt or threat to physically harm self or others or recent failure to provide necessities, but must be based on finding that patient is likely to attempt physical harm or to fail to provide necessities).

■ Whether the lower consecutive-recommitment standard of proof applies to Robledo's commitment depends on whether the petitioners complied with the statutory conditions governing consecutive recommitment. The petitioners argue that the language of section 253B.13, subdivision 1, stating that "commitment may not be continued unless a new petition is filed pursuant to section 253B.07 and hearing and determination made on it" need not be strictly applied and that the district court may temporarily extend a continued-commitment order. Robledo, on the other hand, argues that such an extension violates the statute. We agree with Robledo's interpretation of the statute.

■ Our function in interpreting statutes is to ascertain and effectuate legislative intent. Minn.Stat. § 645.16 (1998). When a statute is free from ambiguity, we look only at its plain language. *Id.; Tuma v. Commissioner of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986). Plain meaning takes into account the whole structure of the statute and the context of the challenged language. *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991). We presume plain and unambiguous statutory language manifests legislative intent. *Lenz v. Coon Creek Watershed Dist.,* 278 Minn. 1, 9, 153 N.W.2d 209, 216 (1967).

■ To apply petitioners' statutory interpretation, we would have to disregard the plainly stated requirement that commitment may not be continued beyond the date specified in the continued-commitment order after the review hearing "unless a new petition is filed pursuant to section 253B.07 *and* hearing *and* determination made on it." Minn.Stat. § 253B.13, subd. 1 (emphasis added).

The plain meaning and significance of this language is confirmed by its context and function in the statutory commitment process. The legislature has specified that a mentally ill person may be subject to an involuntary commitment—initially, and after a review hearing, and even after consecutive recommitment—only for a *determinate* length of time. Indeterminate sentences are reserved for defined catego-

ries of patients who pose a danger to society, such as those committed as mentally ill and dangerous, sexually dangerous, or with sexual psychopathic personalities. *See* Minn.Stat. §§ 253B.18, subd. 3 (1998) (allowing continued commitment for indeterminate period for those found to be mentally ill and dangerous); .185, subd. 1 (Supp.1999) (applying provisions pertaining to mentally ill and dangerous persons to sexually dangerous persons and persons with sexual psychopathic personalities).

■ Giving effect to the plain language requiring a hearing and determination also is consistent with the philosophy underlying the commitment act. Courts have repeatedly recognized the critical importance of restricting a state's power to confine individuals for noncriminal reasons. *See Foucha v. Louisiana,* 504 U.S. 71, 77–80, 112 S.Ct. 1780, 1784–85, 118 L.Ed.2d 437 (1992); *O'Connor v. Donaldson,* 422 U.S. 563, 580, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (1975) (Burger, C.J., concurring); *In re Linehan,* 594 N.W.2d 867, 872 (Minn.), *cert. denied,* —— U.S. ——, 120 S.Ct. 587, 145 L.Ed.2d 488 (1999); *In re Blodgett,* 510 N.W.2d 910, 914 (Minn.1994). The curtailment of a person's liberty through physical restraint suspends a fundamental right and must be undertaken only with scrupulous due-process protection. *Blodgett,* 510 N.W.2d at 914 (citing *Foucha,* 504 U.S. at 80, 112 S.Ct. at 1785). The supreme court has emphasized the judiciary's constitutional duty to safeguard the substantive and procedural rights of the most vulnerable members of our human community. *See Linehan,* 594 N.W.2d at 872 (reviewing constitutionality of Sexually Dangerous Person Act). Judicial safeguards are necessary both because the mentally ill are least able to assure their own protection and because it is attention to our duty to the mentally ill that maintains us as a human community.

■ Petitioners argue that even if we construe Minn.Stat. § 253B.13, subd. 1, to limit application of the lower standard of proof to consecutive recommitment hearings held before the expiration of an existing continued-commitment period, it substantially complied with the higher standard of proof applicable to an initial commitment. *See* Minn.Stat. § 253B.09, subd. 1 (incorporating definition of mentally ill person, requiring recent attempt or threat of physical harm, from Minn. Stat. § 253B.02, subd. 13(a)). We disagree.

■ The entire procedure, as well as the resulting commitment order, was focused on the propriety of continuing Robledo's commitment, rather than on whether he should be initially committed as a mentally ill person. We are also unpersuaded by the county's argument that extension of a continued-commitment period may be required due to crowded court calendars. The record demonstrates that the requests of the county and AMRTC were filed only one day before Robledo's existing continued commitment period was to expire. Finally, the county makes no claim that it complied with the 72–hour hearing requirement applicable to an initial commitment petition. *See* Minn.Stat. § 253B.07, subd. 7 (1998). Failure to provide a hearing to a proposed patient being held in a treatment facility under a judicial hold within 72 hours is a clear violation of the patient's substantive due-process rights. *Doe v. Madonna,* 295 N.W.2d 356, 365 (Minn.1980).

By issuing an ex parte order extending Robledo's commitment beyond the September 30, 1999, expiration of his continued-commitment period, the district court violated the statutory requirements governing consecutive recommitment. Because the ex parte order continuing the commitment was unauthorized, application of the standard of proof governing continued commitment, rather than the standard governing an initial commitment, was improper.

Our conclusion that Robledo's consecutive recommitment was improper does not preclude petitioners from seeking Roble-

do's commitment if they believe that it is necessary and justified by the facts. The petitioners may choose to file a petition for initial commitment and to proceed under section 253B.07, and to seek an emergency 72–hour hold. We express no opinion on the likely outcome of an initial-petition procedure. But we do note that this court's decision does not become final immediately and will not be reduced to judgment for at least 30 days after filing or until any petition for further review is denied by the supreme court. Minn. R. Civ.App. P. 136.02; *see In re Stilinovich,* 479 N.W.2d 731, 736 (Minn.App.1992).

## DECISION

The district court's consecutive recommitment of appellant as a mentally ill person is reversed. Because the statute does not provide for continuation of an existing commitment, absent compliance with the plain language requiring a hearing and determination on the recommitment petition, the district court erred in issuing an ex parte order extending Robledo's commitment on an interim basis prior to a hearing and a commitment determination.

**Reversed.**