**In the Matter of Lashawnda BROWN.**

No. C2–01–46.

Court of Appeals of Minnesota.

June 5, 2001.

Linda L. Bogut, Minneapolis, MN, (for appellant).

Amy Klobuchar, Hennepin County Attorney; John L. Kirwin, Assistant County Attorney, Minneapolis, MN, (for respondent).

Considered and decided by WILLIS, Presiding Judge, HANSON, and FOLEY,* Judges.

## OPINION

HANSON, Judge

Appellant contests a district court order continuing her commitment as mentally ill. Appellant argues that the expiration of her initial commitment precluded consideration of the respondent's late-filed report recommending continued commitment, and that the district court could not avoid that expiration by an ex parte order extending the commitment until a hearing could be held. We reverse and remand.

## FACTS

In April 2000, Hennepin County filed a petition to commit appellant Lashawnda Brown to Anoka Metro Regional Treatment Center ("AMRTC") with a diagnosis of schizophrenia. On April 19, 2000, the district court issued an order to commit Brown for six months, the maximum duration allowed under Minn.Stat. § 253B.09, subd. 5 (2000). That order was stayed upon the condition that Brown voluntarily remain at North Memorial Medical Center and comply with her treatment regime.

On May 2, 2000, the district court revoked the stay of the commitment and Brown entered AMRTC on May 15, 2000. On October 30, 2000, more than six months from the original order of commitment but less than six months from the order revoking the stay, AMRTC filed a treatment report with the district court pursuant to Minn.Stat. § 253B.12, subd. 1 (2000), recommending the continuation of Brown's initial commitment. The district court then issued an ex parte order extending Brown's commitment until a hearing could be held on the report.

On November 8, 2000, the district court held the review hearing and found that Brown continued to be diagnosed with schizoaffective disorder. The district court ordered that Brown's commitment at AMRTC be continued for an additional 12 month period. This appeal followed.

## ISSUES

1. When did the six-month term of the initial commitment commence to run?

2. Does the district court have jurisdiction to extend the initial commitment by an ex parte order issued after the initial commitment has expired?

3. Did the district court err in concluding that the evidence supported the continuation of Brown's commitment?

## ANALYSIS

■ The Minnesota Commitment and Treatment Act allows the court to "commit [a] patient to the least restrictive treatment program or alternative programs which can meet the patient's treatment needs." Minn.Stat. § 253B.09, subd. 1 (2000). In reviewing an order of commitment for mental illness, this court is limit-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

ed to an examination of whether the district court complied with the requirements of the act. *In re Schaefer,* 498 N.W.2d 298, 300 (Minn.App.1993). The commitment must be justified by findings of fact and conclusions of law that "specifically state the conduct of the proposed patient which is the basis for the final determination." Minn.Stat. § 253B.12, subd. 7 (2000); *In re Frederickson,* 388 N.W.2d 717, 723 (Minn.1986). Such findings "shall not be set aside unless clearly erroneous." Minn.R.Civ.P. 52.01; *Schaefer,* 498 N.W.2d at 300.

*Duration of the Initial Commitment*

The initial commitment of a mentally ill patient cannot exceed six months. Minn. Stat. § 253B.09, subd. 5. The act requires the head of the treatment facility to which a patient is committed to file a detailed report on the patient with the committing court prior to the termination of the initial commitment. Minn.Stat. § 253B.12, subd. 1(c). The act further provides that if "no written report is filed within the required time * * * the proceedings must be terminated by the committing court and the patient discharged from the treatment facility." Minn.Stat. § 253B. 12, subd. 1(e).

Brown contends that AMRTC failed to timely submit its report to the district court. She argues that the court therefore erred by accepting the report, failing to terminate proceedings, failing to discharge her and granting an ex parte order to continue her commitment to allow for a hearing. The central issue is when the six-month period of initial commitment commenced.

■ Brown maintains that the commencement of the six-month period of her initial commitment was April 19, 2000— the date when the stayed order was issued. Using Brown's suggested date, the initial commitment period would have ex-

pired 11 days prior to the October 30, 2000, issuance of the treatment report, and any further proceedings thereafter would be unauthorized. *See Id.,* subds. 1(c), 1(e) (requiring a report "prior to the termination of the initial commitment order" and that "[i]f no written report is filed within the required time * * * the proceedings must be terminated by the committing court and the patient discharged from the treatment facility").

Hennepin County argues that the six-month period of initial commitment commenced on May 2, 2000, when the stay of the commitment was revoked. Using this suggested date, the initial commitment would have expired on November 2, 2000, after the filing of the report but before the hearing on the request that the commitment be continued.

In a 1989 decision, this court rejected an argument similar to Brown's, that "the commitment period runs from the date the order for commitment issues, regardless of whether the person actually is admitted to the treatment facility." *In re Spence,* 434 N.W.2d 477, 478 (Minn.App.1989) (holding that the six-month limitation period for involuntary commitment begins to run from date person arrives at the treatment facility and is physically placed under control of its director, not on the date when the commitment order is issued). However, when this court decided *Spence,* the statute read as follows: "For persons committed as mentally ill, mentally retarded, or chemically dependent the initial commitment shall not exceed six months." In 1997, an amendment inserted the following sentence before that language: "The initial commitment begins on the date that the court issues its order or warrant under section 253B.10, subdivision 1." 1997 Minn. Laws, ch. 217, art. 1, §§ 55–59. Therefore, *Spence* is no longer relevant to the calculation of the statutory period for an

initial commitment under Minn.Stat. § 253B.09, subd. 5.

The amended language clarifies that the six-month period commences on the date the district court issues an order under Minn.Stat. § 253B.10, subd. 1, which in turn refers to the issuance of a "warrant or order committing the patient to the custody of the head of the treatment facility" and "stat[ing] that the patient meets the statutory criteria for civil commitment." In this case, that would be the April 19 order, which detailed Brown's mental illness, concluded that she "is a mentally ill person as defined in Minn.Stat. § 253B.02, subd. 13, and is in need of commitment" and committed Brown "to the head of Bristol Place and to the head of the Anoka Metro Regional Treatment Center."

*Ex Parte Order*

Because Brown's initial commitment expired before AMRTC filed the necessary treatment report, the district court should have discharged Brown pursuant to Minn.Stat. § 253B.12, subds. 1(e), 2. Brown argues that the district court improperly issued an ex parte order to extend her commitment after it had expired. We agree, based both upon the reasoning discussed above (the district court was powerless to extend the initial commitment after it had expired) and discussed in this court's recent decision in *In re Robledo*, 611 N.W.2d 67 (Minn.App.2000).

The facts of *Robledo* are similar to those of the present case. Manuel Robledo had one day remaining on his second commitment at AMRTC when it filed a report and petition for continued commitment before the committing court. *Id.* at 68. The district court issued an ex parte order temporarily extending Robledo's commitment to facilitate the hearing on AMRTC's petition for recommitment. *Id.* This court held that the civil commitment act "prohibits a further extension of commitment beyond the expiration of the continued commitment unless specific procedures are followed." *Id.* at 69. Because those specific procedures required that the hearing and determination be made before the present commitment expired, this court reversed the order of recommitment. *Id.*[1]

Respondent would distinguish *Robledo* as involving the continuation of a second period of commitment, which is governed by a different section of the act. Minn. Stat. § 253B.13, subd. 1. Respondent contends that the provisions for extending an initial commitment, as relevant here, are different from those applicable in *Robledo* and authorize an ex parte extension:

> For *good cause* shown, the court may continue the hearing for up to an additional 14 days and extend any orders until the review hearing is held.

(Emphasis added.) Minn.Stat. § 253B.12, subd. 2a. In its motion for an ex parte order to continue Brown's commitment beyond six months, respondent stated that

---

1. We emphasize the following language from Robledo:

> Our conclusion that Robledo's continued recommitment was improper does not preclude petitioners from seeking Robledo's commitment if they believe that it is necessary and justified by the facts. The petitioners may choose to file a petition for initial commitment and to proceed under section 253B.07, and to seek an emergency 72–hour hold. We express no opinion on the

likely outcome of an initial-petition procedure. But we do note that this court's decision does not become final immediately and will not be reduced to judgment for at least 30 days after filing or until any petition for further review is denied by the supreme court. Minn.R.Civ.App.P. 136.02; *see In re Stilinovich*, 479 N.W.2d 731, 736 (Minn.App.1992).

*Robledo*, 611 N.W.2d at 70–71.

"scheduling considerations," and the recommendation in Brown's treatment report for continued commitment, constituted good cause.

The difficulty with respondent's argument is that a finding of good cause cannot be used to resurrect a commitment and initiate a hearing once, as in this case, the commitment had already expired. *See* Minn.Stat. § 253B.12, subd. 2(a) (recognizing that there could be no hearing if the proceedings had been properly terminated for failure to timely file the report, under subdivision 1(e)). Further, scheduling considerations were caused by respondent's own delays and did not constitute "good cause" for a continuance.

*Sufficiency of Evidence*

Because we find that Brown should have been discharged before the hearing, we decline to decide whether the evidence at the hearing sustained the district court's continuation of Brown's commitment.

## DECISION

Appellant's initial commitment expired before the treatment facility filed its treatment report. Therefore, the district court was required by law to terminate the proceeding and discharge appellant. In such case, the district court had no authority to extend the commitment, conduct a hearing, or order a continued commitment.

**Reversed and remanded.**