**In the Matter of Lashawnda BROWN.**

No. C2–01–46.

Supreme Court of Minnesota.

March 28, 2002.

Amy Klobuchar, Hennepin County Attorney, John L. Kirwin, Assistant County Attorney, Minneapolis, MN, for Appellant.

Linda L. Bogut, Minneapolis, MN, for Respondent.

Robert M.A. Johnson, Anoka County Attorney, Janice M. Allen, Assistant County Attorney, Anoka, MN, Amicus Curiae Minnesota County.

## OPINION

ANDERSON, RUSSELL A., Justice.

Hennepin County appeals from a decision of the court of appeals reversing a district court order extending the commitment of Lashawnda Brown as mentally ill. The district court initially entered a stayed order for commitment but later revoked the stay and ordered Brown to a treatment facility. The court of appeals determined that the initial commitment, which is limited by statute to six months, commenced upon the entry of the stayed order for

commitment and terminated prior to the treatment facility's recommendation that Brown's commitment be extended for an additional 12 months. Because of its determination that the initial commitment terminated prior to the treatment facility's recommendation for extension, the court of appeals concluded that the district court had no authority to extend the commitment to permit a review hearing. We conclude that when a stayed commitment is revoked, the six-month statutory limitation for an initial commitment begins when the commitment is executed and the order or warrant committing the patient to the treatment facility is issued. We also conclude that the district court did not abuse its discretion by extending the initial commitment pending a review hearing. We therefore reverse and reinstate the order of the district court.

On April 18, 2000, the district court found Lashawnda Brown committably mentally ill under Minn.Stat. § 253B.02, subd. 13 (2000)[1] but stayed her commitment to Bristol Place and the Anoka Metro Regional Treatment Center (Anoka Metro),[2] finding that a stayed commitment was the least restrictive appropriate disposition.[3] Brown agreed to the written plan for services required of a stayed commitment under Minn.Stat. § 253B.095, subd. 1(d)(1) (2000). The order specifically provided that the stay would terminate without further order of the court on October 11, 2000, that is six months from the date of the April 18 hearing, unless the stay had been revoked prior to that date or the matter had been continued as permitted by law. On May 2, 2000, the district court revoked the stay and issued an order and warrant committing Brown to the head of Anoka Metro. The warrant identified the date of commitment as May 2, 2000. Brown was admitted to Anoka–Metro on May 15, 2000.

On October 30, 2000, Anoka Metro filed with the committing court a treatment report recommending that Brown's commitment be extended.[4] On ex parte motion filed by the county, the district court extended Brown's commitment by six days to allow five days' statutory notice of the review hearing scheduled for November 8,

1. Several provisions of the Minnesota Commitment and Treatment Act, including Minn. Stat. § 253B.02, subd. 13, were amended in 2001. Act of June 30, 2001, ch. 9, art. 9, §§ 20–36, 2001 Minn. Laws 2133, 2430–40 (codified as amended at Minn.Stat. §§ 253B.02–.10 (Supp.2001)). However, none of the amendments are relevant to the case before us.

2. In Hennepin County, a proposed patient is sometimes dually committed to two treatment facilities, allowing commitment to a community-based facility, in this case Bristol Place, with a state regional treatment center as a backup.

3. The Act provides that only after careful consideration of reasonable alternative dispositions may the court commit the proposed patient, and the court then must commit the patient to the least restrictive treatment program or alternative programs that will meet the patient's needs. Minn.Stat. § 253B.09, subd. 1 (2000). Voluntary admission is preferred to involuntary commitment. Minn. Stat. § 253B.04, subd. 1 (2000). Here the court signed a stayed order for commitment on April 18, which was filed on April 19, 2000. A stayed order permitting administration of neuroleptic medication was issued simultaneously with the stayed order for commitment, to become effective if the stayed order for commitment were revoked.

4. The Act requires the head of the treatment facility that has custody or care of a patient who has been committed as mentally ill to file a written report with the committing court prior to the termination of the initial commitment order or final discharge of the patient. Minn.Stat. § 253B.12, subd. 1(c) (2000). Here, the treatment report detailed Brown's status and need for continued commitment and included a description of discharge planning.

2000. Following the hearing, the court extended Brown's commitment by 12 months. On appeal, the court of appeals reversed, holding that the district court had no authority to extend the commitment where the initial commitment had terminated prior to the filing of the treatment report recommending continued commitment. *In re Brown*, 627 N.W.2d 113, 116–17 (Minn.App.2001). The court of appeals decided that the six-month statutory limitation on the initial commitment, Minn. Stat. § 253B.09, subd. 5 (2000), began on April 19, the date the district court filed the stayed order for commitment rather than on May 2, the date the stayed order was revoked and the commitment executed. 627 N.W.2d at 116. The court of appeals also concluded that the district court had no authority to grant a motion to extend the commitment pending a review hearing where the initial commitment had terminated.[5] *Id.* at 117.

## I.

■ This appeal requires that we determine whether the initial commitment, which by statute shall not exceed six months, begins on the day a stayed order for commitment is issued or whether it begins on the day the stay is revoked, the commitment executed and an order or warrant transferring custody to a treatment facility is issued. We interpret de novo the Minnesota Commitment and Treatment Act. *Hince v. O'Keefe*, 632 N.W.2d 577, 582 (Minn.2001). Before discussing the specific rulings under review,

it is helpful to set out briefly the commitment process.

■ Civil commitment is initiated by filing a petition for commitment. Minn.Stat. § 253B.07, subd. 2 (2000). The court may not grant the petition unless there is clear and convincing evidence that the proposed patient is mentally ill and that there is no suitable alternative to commitment. Minn. Stat. § 253B.09, subd. 1.[6] Accordingly, the court must determine that involuntary judicial commitment is the only suitable disposition. Reasonable alternative dispositions include dismissal of the petition, voluntary outpatient care, voluntary admission to a treatment facility, appointment of a guardian or conservator, and release before commitment. *Id.* Release before commitment includes a stayed commitment. Minn.Stat. § 253B.095, subd. 1(d) (2000). If commitment is found to be the only suitable disposition, the court must commit the person to the least restrictive treatment program or alternative programs that will meet the patient's treatment needs. Minn.Stat. § 253B.09, subd. 1. The Act requires the court to find the facts specifically and to state separately its conclusions of law. *Id.,* subd. 2. When the court orders commitment, its findings of fact and conclusions of law must specifically state the proposed patient's conduct that forms the basis for determining that each of the requisites for commitment has been met. *Id.*

An initial commitment may be extended by up to 12 months. Minn.Stat. § 253B.13, subd. 1 (2000). If after the first such extension the patient continues

---

**5.** The court of appeals concluded that the written report, which the head of the treatment facility to which Brown was committed was required to file with the committing court prior to termination of the initial commitment or final discharge under Minn.Stat. § 253B.12, subd. 1(c), was untimely, and Brown should have then been discharged, as

provided by Minn.Stat. § 253B.12, subd. 1(e) (2000). *Brown*, 627 N.W.2d at 116.

**6.** The statute also provides for commitment of a person who is mentally retarded or chemically dependent. Minn.Stat. § 253B.09, subd 1.

to need civil commitment, the patient must be recommitted based on a new commitment petition. *Id.* The initial commitment period under the new petition is limited to 12, rather than 6, months. *Id.* The standard for commitment at the hearing on the new petition is the lesser standard of Minn.Stat. § 253B.12, subd. 4 (2000), which does not require a recent attempt or threat to harm. Minn.Stat. § 253B.13, subd. 1.

If, however, "[a]fter the hearing and before a commitment order has been issued," the court determines that a release before commitment is appropriate, the court may release the proposed patient to the custody of an individual or agency so long as the care and treatment of the patient are guaranteed. Minn.Stat. § 253B.095, subd. 1(a) (2000). The Act authorizes a continuance for dismissal for up to 90 days and a stay of commitment for up to six months. Minn.Stat. § 253B.095, subds. 1(c), 1(d) and 3 (2000).[7] The court may continue the stay for a maximum of an additional 12 months. Minn.Stat. § 253B.095, subd. 3. The case manager must report to the court at least once every 90 days. *Id.*, subd. 2. If the proposed patient has failed to comply with a material condition of release, the court may revoke the release and commit the patient, after notice and a hearing unless otherwise ordered by the court. Minn.Stat. § 253B.095, subd. 5 (2000).

Minnesota Statutes § 253B.10 (2000) sets forth the procedures required upon commitment of a person as mentally ill. The Act requires that, when a person is committed, the court issue a warrant or an order committing the patient to the custody of the head of the treatment facility. *Id.*, subd. 1. The warrant or order must state that the patient meets the statutory criteria for civil commitment, and upon the arrival of the patient at the treatment facility, the head of the treatment facility must retain the duplicate of the warrant and endorse receipt on the original warrant or acknowledge receipt of the order. *Id.* In addition, the treatment facility is to be promptly provided with copies of the petition for commitment, the court's findings of fact and conclusions of law, the court order committing the patient, the report of the examiners, and the prepetition report. *Id.* The Act expressly provides that the initial commitment commences "on the date that the court issues its order or warrant under section 253B.10, subdivision 1," and the duration of the initial commitment is limited to six months. Minn.Stat. § 253B.09, subd. 5.[8]

The Act provides that the treatment facility that has custody of a patient committed as mentally ill must complete and file written reports during the initial period of commitment. Minn.Stat. § 253B.12, subd. 1 (2000). If the patient is in treatment for more than 60 days, then a detailed, narra-

---

7. When the court stays an order for commitment for more than 14 days beyond the date of the hearing, the court must issue an order that includes each of the following:
   (1) a written plan for services to which the proposed patient has agreed;
   (2) a finding that the proposed treatment is available and accessible to the patient and that public or private financial resources are available to pay for the proposed treatment; and
   (3) conditions the patient must meet to avoid revocation of the stayed commitment order and imposition of the commitment order.
   Minn.Stat. § 253B.095, subd. 1(d).

8. That part of section 253B.09, subdivision 5, specifying when the initial commitment begins was added to the Act by legislative amendment in 1997. Act of May 22, 1997, ch. 217, art. 1, § 59, 1997 Minn. Laws 2138, 2159 (codified as amended at Minn.Stat. § 253B.09, subd. 5).

tive report must be filed between 60 and 90 days after the issuance of the commitment order. *Id.*, subd. 1(b). The treatment facility must also file a report prior to termination of the initial commitment order or final discharge. *Id.*, subd. 1(c). If a report is not filed within the required time, or if the report indicates that no further institutional treatment or care is needed, then the proceedings must be terminated by the committing court and the patient must be discharged from the treatment facility. *Id.*, subd. 1(e).

## II.

■ We now turn to the issue of whether the initial commitment, which shall not exceed six months, begins on the day a stayed order for commitment is issued or whether it begins on the day the stay is revoked and the patient committed to a treatment facility. The county argues that the plain language of the statute, practical issues of implementation and public policy indicate that the initial commitment commences upon the revocation of the stayed commitment order and the commitment of the person to the custody of a treatment facility or program. It is Brown's position, however, that the language of the statute reflects that either an executed or stayed commitment order commences the initial commitment, that any ambiguities must be construed in favor of the patient, and that the legislature intended to limit the operation of the initial commitment determination to six months.

■ In that civil commitment for mental illness is the curtailment of individual liberty, the legislature created a statutory scheme that for over 20 years has

endeavored to provide for the treatment of mentally ill persons in the least restrictive manner. Minn.Stat. § 253B.09, subd. 1; *County of Hennepin v. Levine*, 345 N.W.2d 217, 219 (Minn.1984). To that end, the legislature requires that careful consideration be given to alternatives to judicial commitment, including a stayed order for commitment. Minn.Stat. §§ 253B.09, subd. 1, 253B.095. Clearly the legislature intended that a stayed order for commitment and the execution of an order for commitment be two separate and distinct options, and it has been commonly understood that the purpose of a stayed order is for the care and treatment of a proposed patient "without creating a record of a commitment." Eric Janus, *Civil Commitment in Minnesota* 204 (2d ed.1991). Civil commitments, after all, have collateral consequences.[9]

Minnesota Statutes § 253B.09, subd. 5 specifically provides that the initial commitment begins on the date "the court issues its order or warrant for commitment under section 253B.10, subdivision 1." Section 253B.10, subdivision 1 requires that a warrant or order for commitment be provided to, and signed by, the head of the treatment facility upon receipt of the patient. When the order is stayed, however, the court does not furnish a warrant or order for commitment to the head of the treatment facility under Minn.Stat. § 253B.10, subd. 1, because the court is not, at that time, transferring custody of the proposed patient to the treatment facility. In the event of revocation of the stay and execution of commitment, the court then transfers custody of the proposed patient to the head of a treatment

---

**9.** For example, certain data regarding patients committed to regional treatment centers is public data under Minn.Stat. § 13.384, subd. 2(a) (2000) and commitment disqualifies a person from holding various professional licenses. *E.g.*, Minn.Stat. § 147.091, subd. 1(j) (2000) (medical doctors); Minn.Stat. § 148B.175, subd. 8(2) (2000) (marriage and family therapists).

facility by means of an executed order or warrant under Minn.Stat. § 253B.10, subd. 1. It is evident, then, that the document that functions as the mechanism for transfer of custody under section 253B.10, subdivision 1 commences the commitment under section 253B.09, subdivision 5.

Here, the order signed by the court on April 18 and filed on April 19, 2000, was the order in which the court set forth its findings of fact and conclusions of law, as required by Minn.Stat. § 253B.09, subd. 1. Had the court determined commitment to be the only suitable disposition at that time, the court could have transferred custody by that order under Minn.Stat. § 253B.10, subd. 1 and commenced the initial commitment. Minn.Stat. § 253B.09, subd. 5. The court, however, did not transfer custody of Brown until May 2, 2000, when the stay was revoked and Brown was committed to Anoka Metro by order and warrant transferring custody under Minn.Stat. § 253B.10, subd. 1.

The legislature's distinction between executed commitments and stayed commitments is reflected in the differences in the durations and reporting requirements. A stayed commitment may be continued only once, for an additional 12–month period. Minn.Stat. § 253B.095, subd. 3. An executed commitment may be continued for 12 months at the review hearing and thereafter by petition for recommitment. Minn. Stat. § 253B.13, subd. 1. A stayed commitment requires a report by a case manager at least once every 90 days. Minn. Stat. § 253B.095, subd. 2 (2000). An executed commitment requires a report by the treatment facility within 60 to 90 days

of initial commitment and a report from the facility prior to the termination of the initial commitment or final discharge of the patient. Minn.Stat. § 253B.12, subd. 1(b)-(c). While the reporting requirements for a stayed commitment are similar to those for a community-based treatment commitment, the community-based treatment commitment is an involuntary commitment. Minn.Stat. § 253B.097, subds. 1, 3 (2000). By contrast, a stayed commitment requires the proposed patient to agree to the plan for services or a stayed commitment will not be used. Minn.Stat. § 253B.095, subd. 1(d)(1) (2000). Finally, the distinction between an executed commitment and a stayed commitment is highlighted by the early intervention provisions [10] which except persons with stayed commitments from that process: "For purposes of [early intervention], a proposed patient who was released under section 253B.095 and whose release was not revoked is not considered to have received court-ordered inpatient treatment under section 253B.09." Minn.Stat. § 253B.065, subd. 5(b)(3)(ii) (Supp.2001).

Bearing in mind that our obligation is to ascertain legislative intent and to effectuate all of a law's provisions when possible, Minn.Stat. § 645.16 (2000), we hold that for purposes of the six-month limitation on initial commitments under Minn.Stat. § 253B.09, subd. 5, upon the revocation of a stayed order for commitment, the initial commitment begins on the date the commitment is executed and the order or warrant under Minn.Stat. § 253B.10, subd. 1 is issued.[11]

---

**10.** The early intervention provisions allow a court to order involuntary treatment of a mentally ill person that is more limited in duration than a commitment. *In re McCaskill,* 603 N.W.2d 326, 329 (Minn.1999).

**11.** We do share Brown's concern that a stayed commitment could be revoked and commitment executed following a substantial period of release under the stayed order. However, in apparent recognition of the need for due process protections of the liberty interest of a proposed patient released be-

## III.

■ We next consider whether the district court abused its discretion by extending the initial commitment six days so as to allow the five-day statutory notice of the review hearing. A treatment report must be filed with the committing court by the head of the treatment facility "[p]rior to the termination of the initial commitment order or final discharge of the patient." Minn.Stat. § 253B.12, subd. 1(c). If the report is not timely filed, the proceedings must be terminated and the patient discharged from the treatment facility. Minn. Stat. § 253B.12, subd. 1(e). A review hearing must be held within 14 days of the court's receipt of the report recommending continued commitment and before the initial commitment expires. Minn.Stat. § 253B.12, subd. 2a (2000). For good cause shown, the court may continue the review hearing for up to an additional 14 days and extend any orders until the hearing is held. *Id.* The Act also requires that five days' notice of the time and place of the hearing be given the patient, the patient's counsel, the petitioner, and other persons as the court directs. *Id.*

Here, the treating facility filed its report prior to the termination of the initial commitment; but given the timing of the report, there was insufficient time remaining in the initial commitment period in which to provide the required five days' notice prior to hearing. Consequently, the district court extended the commitment by six days.

By analogy to *In re Robledo,* 611 N.W.2d 67 (Minn.App.2000), Brown argues that where Minn.Stat. § 253B.12, subd. 2a requires a review hearing before the initial commitment expires, the Act should be read to require the report to be filed in time to schedule and hold a hearing before expiration of the commitment. *Robledo* involved an ex parte order extending a *continued* commitment beyond expiration of that commitment pending a hearing on a petition for recommitment. 611 N.W.2d at 68. The court of appeals held that the extension was unauthorized and the ensuing recommitment in violation of statutory mandates for consecutive recommitment. *Id.* at 71.

An extension of a *continued* commitment is expressly prohibited unless a new petition is filed under Minn.Stat. § 253B.07. Minn.Stat. § 253B.13, subd. 1. By contrast, an initial commitment may be extended briefly pending a review hearing. Minn.Stat. § 253B.12, subd. 2a. It appears that the statutory provision permitting a 14–day extension on an initial commitment is aimed at accommodating precisely the situation that occurred here. There being nothing suggesting the delay in filing the report was deliberate, we con-

---

fore commitment, the revocation statute generally contemplates notice and hearing. Minn.Stat. § 253B.095, subd. 5. Inasmuch as civil commitment is grounded on prediction-prevention principles and not on retribution-deterrence principles underlying the criminal justice system, *Levine,* 345 N.W.2d at 219, it may be that the necessity for, and extent of, the procedural protections upon revocation of the release under the stayed order increase in proportion to the length of time the person is on release. It must be remembered that prior to 1997, the sole method for transferring custody of a patient to a treatment facility was by warrant. While under the 1997 legislative revisions to the Act an executed commitment order may function as a mechanism for transfer, there is nothing in those revisions suggesting an intent to enlarge upon the reach of the involuntary commitment process, in derogation of the underlying policy of the Act to furnish mental health services in the least restrictive alternative manner, including alternatives short of commitment. A stayed commitment, as an alternative to commitment, occurs "before a commitment order has been issued." Minn. Stat. § 253B.095, subd. 1(a).

clude that the district court did not abuse its discretion by ruling that there was good cause for the brief six-day extension of the initial commitment. *Cf. State v. Friberg*, 435 N.W.2d 509, 515 (Minn.1989) (concluding there was no abuse of discretion when district court found good cause for delay in scheduling trial).[12]

Reversed and judgment of commitment reinstated.

**12.** We note that the treatment facility here signed its final written report on October 25 but did not file the report with the committing court until October 30. We caution treatment facilities that implicit in the reporting scheme is a good faith effort to file these reports promptly following completion of the report and, whenever possible, in a manner that allows for the review hearing without an extension of the commitment.